May it please the court, Ashley Gomez and Dean Jordan Curtis for claimant and appellant, Ms. Monique Williams. With the court's permission, I'm going to try to reserve two minutes for rebuttal. Our client, Ms. Williams, suffers from a very severe combination of disabilities. Not only did the ALJ determine that she has a not otherwise specified cognitive impairment, borderline traits, as well as ADHD. It is the combination of these impairments that have truly held her back from being able to maintain any realistic goals she has set for herself. I think this is further proven by her extensive job history, as well as her participation in a vocational training program, and thirdly, her attempt at a college education. So what do you consider to be the most significant error that the ALJ committed, and why isn't that error harmless? We actually have three errors that we feel are the most important parts. The most important of the three, of course, would be the medical testimony that we feel the ALJ improperly weighed or did not discuss. The first of which, we actually gave five pieces of medical opinion we felt were not truly weighed. Two of which were not raised at the district court level, but they have been briefed for the court's review. Well, I guess that that raises another point. You do raise a number of arguments in your appeal that you didn't raise in the district court. Why should we even entertain them at this point? Because you're not supposed to bring up things for the first time in appeal, so why aren't they weighed? I understand that, especially in regards to the medical testimony of Nurse Mabee, as well as Dr. Overman, but there were three medical testimonies that were raised at the district court level. So I guess what I'm asking you, the ones that you didn't raise below, why should we consider them now? Or are you saying you don't really have a good explanation for why we should consider them now for the first time on appeal? Honestly, I think it'd be in the court's discretion. She had different counsel during the time of the district court, and I believe the justice that they can consider issues that were not raised at the district court level. All right. Well, why don't you go ahead and proceed with your best arguments? Yes. Yes, Your Honor. The one of the medical testimonies submitted was Dr. Jim Johnson, who was a treating physician of Ms. Williams from 1994 to 2005. The ALJ disregarded the 1994 and 1998 medical reports diagnosing Ms. Williams. And then the third opinion from 2005, which was within the onset date, they really largely disregarded and narrowed down to one sentence in their report, noting that it merely meant she had moderate problems with pace and persistence when she was on medication, but marked limitations when she was not. Under the Ninth Circuit, treating physicians are given great deference, and the court has to give a clear and convincing reasons for not giving greater weight to treating physician testimony. What about just the adverse credibility finding that the ALJ made? I mean, he apparently did not believe your client when she testified, you know, that she had these grave limitations, and he seemed to think that probably the reality was that there were jobs that she could do, but she just didn't find them interesting enough to want to do them. You know, it's our contention that purely based off of the medical evidence, you know, non-subjective medical evidence that was not only based on her own subjective allegations, but was based on clinical interviews of her, her parents, her employers, as well as a Wexler's adult intelligence test and a Minnesota MMPI. We feel that even if the to prove that she had a disability. Well, the ALJ did give reasons for rejecting Dr. Johnson's findings, though. I'm sorry, which doctor? The ALJ, Dr. Johnson. The ALJ did give reasons for rejecting the findings. Are you, and why, why isn't that supported by substantial evidence in the record? There were two Dr. Johnsons. The 1994 and 1998 reports were highly disregarded as non-probative because of the nominal, and this was the same argument they gave for Dr. Wicher, because of the nominal amounts of money that she made after the disability onset. She's claiming disability since November 30th of 2001, but The plaintiff would like to cite Hollahan, noting that some improvement does not necessarily mean that the claimant is able to work. Secondly, as purely persuasive authority, there's an Arizona district case that explained a claimant who worked after the onset of disability, it did not necessarily mean that they were not disabled. So showing these two cases, it shows that this evidence was more probative than the ALJ argued. Counsel, how do you deal with what appears to be an undisputed fact, and that is that your client studied cosmetology, was able to participate in a 20-hour-a-week educational program for a significant period of time, and then capped that by taking and passing a state license. And then apparently, when asked about that, said, oh, well, I don't want to be a cosmetologist. Well, if she can be a cosmetologist, and apparently she's trained to do it and licensed to do it, if she can do it, she's not disabled. I think in regards to the cosmetology training as well as licensing, she was going through that at the time when she was in her vocational rehabilitation program. This was a very supportive environment that continued to push her and force her to finish this program. Secondly, because she's claiming mental disabilities instead of It's a lot harder to tell if she could actually become a cosmetologist or not. I'm sorry. She is licensed to. But if she could actually have the sustained attention to perform those tasks. But the only way we could find that out is if she tries and fails. I feel like she has a very long history of trying and failing. It's the combination of the disabilities that are, you know, not necessarily stopping her from getting the jobs. It's stopping her from being able to maintain these jobs as meaningful employment. So what would you consider your best case, supporting the position that we should reverse here? In addition to the medical testimony, there, of course, is the lay witness testimony. Not only are ALJs allowed to consider lay witness testimony, but they're also Disregarding of the evidence is a violation of the Secretary's regulations, saying they will consider observations by non-medical sources. The ALJ did give a paragraph of reasons why they said they were not giving great weight to this lay witness testimony. I think it's even more compelling because it is Ms. Williams' father who has had the chance to observe her since she's had problems since. Well, it wasn't that the people, the ALJ did consider the testimony, correct? Yes. And they said that they were not giving any great weight to it. And that was because? One of the reasons was that neither Mr. Tomasi nor Mr. Williams had a expertise in medical or vocational matters. But because this is lay witness testimony, it's the plaintiff's contention that should not be that should not matter. Secondly, they also stated, because objective medical evidence and other factors do not support Claimant's allegations, while Commissioner properly cites Valentine and Molina for the proposition, you can reject lay witness testimony if it essentially repeats the same thing. Claimant argues that Mr. Tomasi and Mr. Williams were not merely repeating Ms. Williams' own subjective complaints. But what if my mother came in and said I couldn't walk, but then I walked at the doctor's office and the doctor, you know, submitted testimony to that? Are you saying that just because it's a lay witness and it conflicts with other testimony that the ALJ can't disregard it? No, Your Honor. If it truly conflicted with the medical record as a whole, of course, that would be a valid reason to disregard it. But because we're also arguing that they improperly ignored other medical evidence that is consistent with the lay witness testimony, it should have been given greater weight. Well, so why isn't your argument at the bottom line is that the ALJ didn't give the same weight that you would like to have been given to the testimony? And that's why it should? Is that what you're arguing? Yes. I believe our main argument is that the overall decision was not supported by substantial evidence. Well, that's different than saying that, I mean, the ALJ has, the ALJ could make a number of decisions and it could be supported by substantial evidence. One you might like, one you, you know, you wouldn't like. So what I'm hearing you say is the ALJ should have done it differently, but I'm not really hearing that there wasn't substantial evidence to support what the ALJ did. Well, the substantial evidence that they gave, you know, it's our argument that they're not valid reasons for discrediting lay witness testimony. It was really narrowed down to one paragraph where they explained their reasons for rejecting the lay witness testimony. Well, let's assume there was error on that front in terms of, you know, discounting the lay witness testimony. But it's not clear to me that it added much. So why wouldn't it be, why couldn't we deem it harmless error here? What, in fact, did that lay witness testimony add? I think because the ALJ found that Ms. Williams' own subjective complaints were not credible, but also because the lay witness testimony was able to restate some of the same complaints, it helped, it would not have been inconsequential because the ALJ could have considered those arguments, which would have hopefully changed the RFC limitations, as well as the vocational, as well as the questions posed to the vocational expert in regards to the ADHD and problems with attention. Finally, I am very low on time, but I would like to address the vocational expert questioning. The Ninth Circuit appears to have a very high standard of what these vocational questions should pose to the experts. It must set out all limitations and restrictions, as well as the impairments, and they're required to be accurate and detailed. It is the plaintiff's contention that the R ---- I'm sorry, that the vocational question that merely restated the RFC was not detailed enough to truly reflect not only the ADHD, Ms. Williams is alleging. So you think the hypotheticals were not complete? Is that what you're saying? Yes, ma'am. In regards to the depression aspect of her medical diagnosis, which the ALJ also found, the RFC was quite broad, simply listing that she needed repetitive work with no multitasking. However, I think it's important to note that a second question was posed as a hypothetical, asking about someone that would be distracted and unable to focus, as well as who lagged in productivity. At that point, the vocational expert actually determined that there would not be jobs in the national economy for someone like that. I think an argument can be raised that someone who's distracted and unable to focus, of course, that could go toward symptoms of ADHD, but that could also very well be symptoms of depression, in which case it would have been another error for the ALJ to find there were jobs in the national economy. Would you like to reserve the balance for rebuttal? I would, please. All right. Thank you. Thank you, Your Honor. Good morning. Good morning, Your Honors. Elizabeth Feer for Michael J. Astrew, the Commissioner of Social Security. Could I ask you just to start with the last point that your opponent just made? About the vocational expert testimony? That second question seemed to me to describe characteristics that pertain directly to Ms. Williams, and the vocational expert in response to that second question said there are no jobs that someone with those limitations could do. Well, that question is not what the ALJ ultimately included in its RFC, which is incredibly restrictive. The ALJ limited this claimant to jobs that have clearly defined tasks and responsibilities, limited public interaction, unless specific, and he gave the example, which is exactly from Dr. Bryant's very detailed report and evaluation that unless she has something specific like checking out library books, simple repetitive work, no multitasking, no production, line work, and close supervision. That's the ALJ's ultimate RFC finding, which is all that matters for the hypothetical questions and for the vocational expert's testimony to be valid. That RFC is fully supported by Dr. Bryant's evaluation. It's also supported by Dr. Patrick's evaluation and by several DDS positions who reviewed the record. And why, then, aren't the additional limitations that were posed in the second question also fully supported by the record? That's what I don't understand. I really honestly can't remember exactly what they were, the additional limitations. We all know she can't always stay on task. The hypothetical, there's really no question in this case that this claimant has limitations. The RFC that I just described accounts for that. There's never been a contention that she's a malinger. That's, well, it's been raised, but it hasn't been actually diagnosed. And I think part of the reason why we're even here is because her condition is kind of confusing in some respects, but as the record clearly shows that she is more capable than she says she is. And with the limitations that the ALJ ultimately assessed, the vocational expert did identify four different jobs that someone with those limitations could have. So are you saying that she can't multitask is a large enough umbrella to cover her problems with not being able to concentrate, losing focus? Yes. Yes. And if you look at her work history, she's always tried to work above her skill set. That's not really in question at all. If she'd actually tried to perform the kinds of jobs that are encompassed in this RFC, she would likely be successful. That's the whole point. When you say she tries to work above her skill set, it's almost like it sounds like penalizing someone for trying too hard. You know, it's, I mean, how do you overachieve? But what you're saying is she's trying to do jobs that require multitasking, and that's why she's failing, so. She's trying to do jobs that she's not qualified for. I think it's very clear from the record that she tried to get jobs as a veterinary assistant without any actual training in that. It's clear from the record that she doesn't want to do the jobs for which she is capable. She says at one point, and it's in the claimant's excerpt of record, that I don't want to do that job, it's a teenager's job. Well, as the ALJ says more than once in his decision, boredom is not a disability, and no one's guaranteed a fulfilling job. That's not the point of the Social Security Act and disability benefits. So the very restrictive RFC is supported by the record. But she's not a malingerer, as it were, but the ALJ is questioning that she wants jobs that, you know, that really she's not qualified for and she's not willing to do what she is qualified for. Yes, and that gets into the credibility analysis, which has not been challenged. The ALJ gave very good reasons for finding that this particular claimant's account of her limitations is not supported by the record. And the fact that she completed cosmetology school, which is my opponent said that it was in a supportive environment, but there's no evidence that this was a special kind of degree she got. She's a cosmetologist and she passed the licensing exam. If she's capable of doing that. Did she ever seek employment in that field? It seems like she did from some of the treatment records, but it's not absolutely clear. But she did at one point say, I don't want to have to lease a workstation. I just want a salaried position. So, again, she wants jobs that are above what she's actually capable of doing. And the cosmetology – did you have a question? No. The cosmetology examples show that's well beyond the limiting, excuse me, RFC that the ALJ essentially assessed. So there's this limiting RFC, which is supported by medical evidence. There's the credibility issue that's never been challenged that's fully supported by this record. What do you think is the weakest part of the ALJ's decision? And if there is an error, is it harmless? Quite honestly, I think the weakest part of the decision is just that this ALJ referenced other ALJ's decisions and it gets kind of confusing to bring them all together. But I don't think there are any errors in this decision. I think it's one of the most thorough ALJ's decisions I've seen in my career with this agency. Well, counsel for the appellant talked about Dr. Johnson's 1994 and 1998 reports. And the ALJ – was the ALJ required to consider those? Weren't they relevant to the decision? Well, both of those reports were issued years before this claimant even says she became disabled. 1994 and 1998 claimant doesn't even allege disability until November 2001. That fact in and of itself makes those reports very unprobative. And then 94 – Well, it might, but then on the other hand, it gives you a broader history of someone. That's true. And I was about to expand on that, that in 94, Dr. Johnson says things like she's unemployable. He references a listing, but he doesn't explain anything about it. But then in 1999, she earned over $20,000. So if in 94 this doctor said she's so limited she can't work at all, and then she proves that she can work, also gets this cosmetology degree and passes the boards, that's – I mean, that proves that that wasn't particularly probative. And then in 2005, it's not even clear that he examined her again. He just reiterates what he said in 94 and 98 and then says that she appeared disabled. He suggested job hardening, which apparently failed, but he doesn't explain that at all. And then he also says that she has these weaknesses that have a profound effect on her ability to work. Well, everyone agrees that she does. That's why we have this limiting RFC assessment. Well, can I take you back to that second hypothetical? Because I found the language that you couldn't remember. Okay. So the ALJ asked the vocational expert to add to the additional limitations already mentioned, the fact that the person is going to be distracted, unable to focus, and productivity is going to lag. Those are the only three things that were added, and they seem to describe exactly the problems that Ms. Williams has experienced in the workplace. And in response to that hypothetical with the additional limitations, the vocational expert says there are no jobs in the national economy that this person could get. I can see why that's problematic to you, Your Honor. But I can also say that the focus is accounted for in several different limitations in the RFC that the ALJ did assess, and that the multitasking is – I mean, these are simple, repetitive jobs that she's supposed to be – that are in the hypothetical with the RFC that is in the record. It's not really clear to me why the VE would say that those additional limitations really are that different. But each one of those factors, to me, is accommodated in the RFC that the ALJ did assess and the hypothetical question that he did use to support his Step 5 finding. Well, the ALJ must not have believed that then, because why would he have posed the second question with these additional limitations? I mean, the ALJ is the one who called those out, not the vocational expert. Honestly, Your Honor, I don't have an answer for that, except to take you back to the fact that when the ALJ did present the exact limitations in the RFC, that VE did come up with jobs. The VE might have interpreted what the ALJ was saying in a way that we don't know from the record, but it is very clear that with those RFC limitations, there are four jobs that the person could perform. And that's really never been challenged by claimants. So that should be the deciding factor. What are the issues that appellant's raising for the first time on appeal, and should we consider those or not? Well, there are issues about different medical practitioners in the record. And even if this Court wants to address everything that claimants said, this record still overwhelmingly supports the ALJ's decision. I would like to point out just about the doctor or nurse practitioner, Mabee. The earlier ALJ actually did go in detail about those reports, and then the second ALJ incorporated that decision by reference. So if you look at the notes from nurse practitioner Mabee, which are in claimant's 346 to 370, and then 383 to 89, they are overwhelmingly positive. I mean, at one point, December 12, 2000, finally doing very well, enjoying her job, getting along well with her coworkers, made some friends, planning for the holidays, good relationship. I don't know how that changes the ALJ's decision. So that's in regard to the medical evidence. Did you have a question, Your Honor? Oh, I was just going to ask you, did any of the psychologists or mental health practitioners discuss the field of cosmetology in reference to the Petitioner's problems? Dr. Bryant is the only one who references it. Claimant was in cosmetology school while she was examined by Dr. Patrick, but she didn't mention this. And Dr. Patrick also called into question her credibility in other areas where she didn't tell him, she didn't admit that she'd been fired from jobs not for performance, but for misusing company funds and over-reporting overtime hours. So Dr. Patrick should have been aware of that, but apparently wasn't. But Dr. Bryant did mention that she had completed cosmetology school, and this was in August 2007. Dr. Bryant was unclear that claimant had passed the licensing requirements, which she had done in October 2005. So she's the only doctor that was obviously aware of this aspect of claimant's past. And as I've said, her functional limitations very directly mirrored the functional limitations that the ALJ assessed. So we really don't have any doctors examining doctors during the period of time the claimant's alleging disability who said she couldn't work. And that's further support for the ALJ. What about the lay witness testimony? The lay witness testimony. The ALJ did address the lay witness testimony. He very clearly said twice that it mirrored the claimant's allegations. This Court very recently, very emphatically emphasized in Molina that that is a valid basis for rejecting lay witness statements. I don't see anything in the lay witness statements that's any different than what claimant said. It's the same thing. She has trouble concentrating, she has trouble staying focused, and she gets distracted. That's all the same thing. Molina and Valentine both very clearly say that's a valid reason for finding lay witness testimony not fully credible. And not to mention the fact that Bayless also says an inconsistency with the medical evidence is another reason, and the ALJ said that as well. So unless the Court has any more questions, we stand on our briefs. No? Thank you. We don't have any additional questions. Thank you for your argument. I would like to start by addressing the point that she is only attempting jobs at which she is above her skill set. Actually, in the medical record of LifeWorks, she goes into detail about all the jobs she has been applying for, one particularly which she applied for, I think, in 2004, 2005, where it was a graveyard shift. So she is not merely trying jobs that she is, you know, she's not. Well, a graveyard shift for what? It was a graveyard shift for? I mean, if it was a graveyard shift to be a police officer, that wouldn't No. No, Your Honor. It was. I'm sorry. I can't find it. I'm having trouble locating it at the current moment. And then additionally Did she ever apply to be a cosmetologist anywhere? I do not think so, no, Your Honor. And she explained that by saying, I really don't want to do that. I don't think that she was. She did tell one of her doctors that she was not interested in cosmetology, but she had made that decision while she was still in cosmetology school. But because of the vocational rehabilitation program, she did try and did successfully finish her licensing. Again, I would just like to reiterate that it is the combination of all of these impairments that make it hard for her to maintain a task. Her attempting to, pardon, it's the claimant's argument that she should not be punished merely for trying, especially for trying things that are above her skill set. I think it's unfair to argue that, you know, she got, it supports their position that she got a cosmetology license, and then, again, argue that she's not qualified for it. All right. Do you just have a few seconds? So go ahead and wrap up. I'd just like to thank you for your time. All right. Thank you both for your argument. This matter will stand submitted. I would like to, to the extent that any of the counsel today are representing individuals pro bono, I would like to extend our gratitude on behalf of the court in that obviously that's a very important service that people provide, and we rely on that to see that people receive good representation. And so thank you for doing pro bono work, and this matter will stand submitted. Thank you both for your argument. It was helpful to the court.
judges: Singleton, Callahan, Watford